**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**INVENTORPRISE, INC.,**

                            **Plaintiff,**

    **-against-**                                                 **09-CV-00380**

**TARGET CORPORATION and**
**TARGET BRANDS, INC.,**

                            **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.   INTRODUCTION**

      Plaintiff Inventorprise, Inc. commenced this action against Target Corporation and Target Brands, Inc. (referred to collectively in the Complaint as "Target") asserting a claim of false patent marking in violation of 35 U.S.C. § 292.  Target has moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(7).  See Def. Mem. L. dkt. # 8.  Plaintiff has opposed the motion, see Pl. Opp. Mem. L., dkt. # 11, and Defendant has filed a Reply. See Def. Reply Mem. L., dkt. # 12.  For the reasons that follow, Defendant's motion is granted and the action is dismissed.

**II.   BACKGROUND**

      Plaintiff commenced this action against Target invoking the Court's federal question

1

and patent law subject matter jurisdictional grants. (Compl. ¶ 8; see 28 U.S.C. §§ 1331 & 1338(a)). Plaintiff alleges that Target violated 35 U.S.C. § 292(a), the false patent marking statute, because it marked the packaging of the "Closet Cedar Storage Accessories Set" ("the Product"), an un-patented item, with a U.S. patent number and then sold the Product in its retail stores. (See generally Comp.).

Target filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) contending that the Court lacks subject matter jurisdiction over the matter because there is no cognizable § 292(a) claim against Target, and pursuant to Fed. R. Civ. P. 12(b)(7) contending that Plaintiff failed to join a necessary party to the action under Fed. R. Civ. P. 19.[1] (See dkt. # 11, Def. Mem. at 3-7). In the alternative, Target seeks to substitute Cedar Fresh Home Products, LLC ("Cedar Fresh"), the manufacturer of the Product, as the sole defendant in this action. (Def. Mem. at 6-7). In support of its motion, Defendant offers the declaration of Kimberly S. Yearick, National Sales Manager for Cedar Fresh. Ms. Yearick attests that: (1) the Product is "made and delivered to Target by Cedar Fresh, who is a vendor to Target Corporation;" (2) the package containing the subject patent mark "is made under the direction and control of Cedar Fresh and Cedar Fresh is wholly responsible for the patent number appearing on the Product;" (3) the patent of the subject patent mark "is owned by Cedar Fresh, not Target;" and (4) "Target Corporation has had no role whatever

---

[1] Although the parties use the pre-2007 amendment terms of "necessary" and "indispensable" party, Rule 19 no longer uses those terms. See Fed. R. Civ. P. 19 (addressing "required" parties). "However, the Second Circuit has stated that there is no 'substantive difference between the present rule and the rule as applied by the district court prior to the 2007 amendment.'" Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co., 2009 WL 2135396, at *2, n. 38 (S.D.N.Y. July 16, 2009)(quoting CP Solutions PTE, Ltd. v. General Elec. Co., 553 F.3d 156, 159 n. 2 (2d Cir. 2009) (citing Republic of Phil. v. Pimentel, --- U.S. ----, 128 S.Ct. 2180, 2184 (2008) ("As the substance and operation of the Rule both pre- and post-2007 are unchanged, we will refer to the present, revised version."))).

in determining whether it is appropriate to mark the product with the patent number in question, nor has Target ever directed the patent number to be either placed on the package or not." (Yearick Decl. [dkt. # 8-2]). Plaintiff has not contested the factual allegations set forth in this declaration, and Plaintiff concedes that, based upon these allegations, "it would appear that Cedar Fresh falls within the definition of 'necessary party' pursuant to Rule 19(a)." Pl. Opp. Mem. L. pp. 4-5.

### III.   STANDARDS OF REVIEW

#### a.   Fed. R. Civ. P. 12(b)(1)

A case is to be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate the matter. Makarova v. United States, 201 F. 3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002); see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

When a defendant moves to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." Id. Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. See Makarova, 201 F.3d at 113; Filetech S.A. v. France Telecom, S.A., 157 F.3d 922, 932 (2d Cir. 1998); Gunst v.

Seaga, 2007 WL 1032265, at *2 (S.D.N.Y. March 30, 2007).[2] "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" Gunst, 2007 WL 1032265, at *2 (quoting Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)). "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." Lopresti v. Merson, 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21, 2001).

In the final analysis, the question on a Rule 12(b)(1) motion is whether the plaintiff has pleaded a "colorable claim" that invokes the Court's subject matter jurisdiction. Arbaugh v. Y & H Corp., 546 U.S. 500, 513, 126 S. Ct. 1235, 163 L. Ed.2d 1097 (2006). "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed.2d 210 (1998). If any of the grounds for subject matter jurisdiction are lacking, dismissal is mandatory. See United Food & Commercial Workers Union Local 919 v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994).

### b.     Fed. R. Civ. P. 12(b)(7) and 19

"Rule 12(b)(7) allows a party to assert by motion the defense that the opposing party failed to join a party under Rule 19." Davidson Well Drilling, Ltd. v. Bristol-Myers

---

[2] ("When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits.")(citing Makarova, 201 F.3d at 113).

Squibb Co., 2009 WL 2135396, at *2 (S.D.N.Y. July 16, 2009). "Like a Rule 12(b)(1) motion, a court deciding a Rule 12(b)(7) motion may consider documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit. " Id. (citations and interior quotation marks omitted).

Rule 19 determines whether a party is required to be joined in the litigation. See Fed. R. Civ. P. 19.³  "[T]he question of whether a case should be dismissed absent a required party arises only where joinder of that party is not feasible." Boursoumian v. University at Buffalo, 2009 WL 691297, at * 5, n. 3 (W.D.N.Y. March 11, 2009)(citing Republic of the Philippines v. Pimentel, --- U.S. ----, 128 S. Ct. 2180, 2188, 171 L. Ed.2d 131 (2008)); see also Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000),⁴ cert. denied, 531 U.S. 1051, 121 S. Ct. 655, 148 L. Ed.2d 558 (2000).  "The moving party 'has

---

³Rule 19 provides in pertinent part:

(a) **Persons Required to be Joined If Feasible**.

(1) **Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

* * *

(b) **When Joinder Is Not Feasible**. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.

Fed. R. Civ. P. 19.

⁴("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).")

5

the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence.'" William A. Gross Const. Associates, Inc. v. American Manufacturers Mut. Ins. Co., 2009 WL 427280, at * 6 (S.D.N.Y. Feb. 23, 2009)(quoting Citizen Band Potawatomi Indian Tribe v. Collier, 17 F.3d 1292, 1293 (10th Cir.1994)).

**IV.   DISCUSSION**

A court should consider a 12(b)(1) motion before ruling on any other motions because dismissal of an action for lack of subject matter jurisdiction will render all other motions moot. United States ex rel Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993), cert. denied, 508 U.S. 973 (1993). Federal district courts have original jurisdiction over civil actions arising under the laws of the United States, 28 U.S.C. § 1331, and "under any Act of Congress relating to patents . . . ." 28 U.S.C. §1338(a). Plaintiff asserts that Target violated § 292(a) of the patent law, 35 U.S.C. § 292(a). The question that arises on the Rule 12(b)(1) motion is whether Plaintiff has pleaded a colorable § 292(a) claim against Target.

In the Complaint, Plaintiff alleges that Target violated § 292(a) because it marked, or caused another to mark, the Product with a U.S. Patent number that did not apply to the Product knowing, or having reasons to know, that the Product was un-patented. See Compl. ¶¶ 11-29. Section 292(a) provides, in relevant part:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public
>
> Shall be fined not more than $ 500 for every such offense.

35 U.S.C. § 292(a).

The purpose of 35 U.S.C. § 292(a) is to protect the patentee against fraudulent use of his name or device, and to prevent public deception by advertisements that claim that a product is patented or that an application for a patent is pending when that is not true.  1 Pat. L. Fundamentals § 2:27, 2d ed. (Thomson Reuters 2009)(citations omitted); see  7 Chisum, Patents, § 20.03[7][c][vii] (2005);[5] Kalkowski v. Ronco, Inc., 424 F. Supp 343, 353 (N.D. Ill. 1976);[6] accord Forest Group, Inc. v. Bon Tool Co., 2008 U.S. Dist. LEXIS 57134, 2008 WL 2962206 (S.D. Tex. 2008).[7]  "Intent to deceive the public is an essential element of an action based on 35 U.S.C.  § 292."  1 Pat. L. Fundamentals § 2:27.

Section 292 is in the nature of a *qui tam* action because "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."  35 U.S.C. § 292(b); see 1 Pat. L. Fundamentals § 2:27.[8]  Because "[t]he statute is 'penal in nature [it] must be construed strictly.'" Max Impact, LLC v. Sherwood Group, Inc., 2009 U.S. Dist. LEXIS 71013, at* 3 (S.D.N.Y. Aug. 10, 2009)(quoting Proportion-Air, Inc. v. Buzmatics, Inc., 1995 U.S. App. LEXIS 25871, 1995 WL 360549, *3 (Fed. Cir. 1995)).

There is no dispute that Cedar Fresh, the owner of the patent identified on the

---

[5]("The purpose of the [false marking] statute is to protect the public.")

[6](The purpose of 35 U.S.C. § 292(a) is to protect patentees against fraudulent use of their name or device, and to prevent public deception by false marking.)(citing Lase Co. v. Wein Products, Inc., 357 F. Supp. 210 (N.D. Ill. 1973))

[7]("[o]ne purpose of the 'false marking' statute is to 'penalize those who would palm off upon the public unpatented articles, by falsely and fraudulently representing them to have been patented.'") (citation omitted)

[8]("Causes of action brought by an informer under a statute which establishes a penalty for the commission or omission of a specified act and provides that such penalty shall be recoverable in a civil action with part of the penalty going to the person bringing the action and the remainder going to the state are called *qui tam* ('who as well') actions, because the private party bringing the action declares that he sues for the state as well as for himself.")

Product's package, placed the patent number on the package and Target "had no role whatever" in that action. Plaintiff contends, however, that even if Target did not mark the package, it violated § 292(a) because it used the improper U.S. Patent number in advertising in connection with an unpatented article for the purpose of deceiving the public.

To state a claim under 35 U.S.C. § 292(a) against a party that has had no role in the actual marking of a product, a plaintiff must show that the defendant (1) used the word "patent" (or any word or number importing that the product is patented) "in advertising in connection with any unpatented article;" and (2) acted with the intent to deceive the public. 35 U.S.C. § 292(a); see Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005);[9] Chamilia, LLC v. Pandora Jewelry, LLC, 2007 U.S. Dist. LEXIS 71246, *29 (S.D.N.Y. Sept. 24, 2007);[10] Max Impact, LLC., 2009 U.S. Dist. LEXIS 71013, at *2 - *3;[11] see also Juniper Works v. Shipley, 2009 U.S. Dist. LEXIS 40978, at *7 (N.D. Cal. May 14, 2009).[12] Plaintiff cannot establish these elements against Target.

Turning first to the "use in advertising" element, the express language of § 292(a)

---

[9] (A pleader may establish a *prima facie* case of false marking under the statute by making three allegations: (1) an article was falsely marked or advertised with the word "patent" or any word or number that imports that the article is patented, (2) the article so marked or advertised was an unpatented article, and (3) the marking or advertisement was made with the intent to deceive the public.)

[10] ("To state a cause of action for false patent marking, a plaintiff must show both: (1) advertising or use of the word "patented" in connection with a device that is not patented; and (2) intent to deceive.")

[11] ("To state a claim for false marking under 35 U.S.C. § 292, a plaintiff must allege that the defendant 'acted with the deceptive purpose necessary to trigger liability under the false marking statute.'")(quoting Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V., 464 F.3d 1339, 1355 (Fed. Cir. 2006))

[12] ("To state a false marking claim, the plaintiff must allege the following: (1) a marking importing that an object is patented; (2) falsely affixed to; (3) an unpatented article; (4) with intent to deceive the public.")(citing Clontech, 406 F.3d at 1351)

8

requires that there "be a nexus between the defendant's marking, affixing or using of a patent *and* the advertising of the product." Juniper Works, 2009 U.S. Dist. LEXIS 40978, at *9 (emphasis in original). The term "advertising" implies an act soliciting the general public regarding the product. See id.[13] Because "advertising" is not defined in the statute, the plain meaning of the term provides guidance as to its definition. "'Advertising' is defined as 'the action of calling something . . . to the attention of the public esp[ecially] by means of printed or broadcast paid announcements.'" Chamilia, 2007 U.S. Dist. LEXIS 71246, at *29 (quoting Webster's Third New International Dictionary (1993)).

Case law interpreting a similar term under the Lanham Act provides further guidance as to the definition of "advertising." "In this circuit, to constitute 'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) 'although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.'" Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d Cir. 2004) (quoting Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 56-58 (2d Cir. 2002)). Promotion and advertising are distinct terms. "[A]dvertising is generally understood to consist of widespread communication through print or broadcast media," whereas promotion "may take other forms of publicity used in the relevant industry, such

---

[13] ("Juniper cites no authority to support the notion that a section 292(a) claim can be stated simply by improperly marking, affixing or using a patent in relation to an unpatented article without any connection to advertising of the unpatented article. Nor would Jupiter's construction of section 292(a) be logical. The purpose of the statute is to protect the public from being misled as to whether a product is, in fact, subject to patent protection. To the extent that the public is not being solicited regarding the unpatented product, it is unclear how the alleged deception would harm the public, and thus, necessitate the protection of section 292(a).")

9

as displays at trade shows and sales presentations to buyers." Fashion Boutique, 314 F.3d at 57.

> [U]nlike the Lanham Act, Section 292 applies only to "advertising;" it does not encompass "promotion." Thus, "the expression 'uses in advertising' cannot refer to any and all documents by which the word 'patent' is brought to the attention of the public; it can only refer to use of the word 'patent' in publications which are designed to promote the allegedly unpatented product, namely, advertisements." [Accent Designs, Inc. v. Jan Jewelry Designs, Inc., 827 F. Supp. 957, 968-69 968 (S.D.N.Y. 1993)].

Chamilia, 2007 U.S. Dist. LEXIS 71246, *29 - *30.

Here, the alleged "advertisement" of the false patent number appears on the back of the package that holds the "Closet Cedar Storage Accessories Set." See Pl. Resp., Ex. A [dkt. # 11-1]. There it is stated: "Protected by U.S. Patent # 5,419,935." Pl. Ex. A. It is evident from Plaintiff's Exhibit A that the package is designed to hang from a rod affixed to a wall or shelf so that the front of the package, which has a clear plastic sheet covering the pieces of the Product, is visible to the public as they walk in the aisle of Defendant's stores. It is also evident that the patent mark in issue (*i.e.* the statement that the Product is "Protected by U.S. Patent # 5,419,935") is on the backside of the packaging. Thus, when the package is hanging from the rod, the patent mark is not visible to the public. To view the patent mark, an individual must remove the package from the rod and turn it over.

This marking does not constitute "advertising" within the meaning of § 292(a). The printed words on the backside of the packaging do not constitute a "printed . . . paid announcement" intended to call the public's attention of the Product. Further, there is no nexus between the marking and an act of solicitation of the general public to purchase the Product. See Juniper Works, 2009 U.S. Dist. LEXIS 40978, at *9.

There is also no merit to Plaintiff's contention that the mere act of offering a mis-

marked product for sale in a retail store brings the matter within the purview of the "in advertising" provision of § 292(a). Congress has, in other patent statutes, imposed liability for the sale of items that infringe the patent law. See e.g. 35 U.S.C. § 271(a).[14] Clearly, Congress knows how to draft legislation imposing liability for the act of selling an infringing item. Under the age-old tenant of statutory construction *inclusio unius est exclusio alterius,* the inclusion of the term "advertising" and the exclusion of the terms "to sell" or "sells" leads to the conclusion that Congress intended the "use in advertising" provision of § 292(a) to address acts of broadcasting false patent information to the general public, not to impose liability on retailers who merely sell mis-marked products.

Further, Plaintiff has not alleged sufficient facts to satisfy the "intent to deceive" element of the claim. "Because Section 292 is, unlike the Lanham Act, a penal statute, it must be strictly construed, and, as such, an intent to deceive will not be inferred from statements that may have been the result of inadvertence or mistake." Chamilia, 2007 U.S. Dist. LEXIS 71246, *29 (citing Blank v. Pollack, 916 F. Supp. 165, 173 (N.D.N.Y. 1996)). Indeed, the Fifth Circuit has "adopted the formulation that an honest, though mistaken, mismarking of an article would not trigger liability under the statute." Clontech, 406 F.3d at 1352 (citing Brose v. Sears, Roebuck and Co., 455 F.2d 763, 768-69 (5th Cir. 1972)). The Federal Circuit has concluded:

> We see no reason to interpret the statute differently [from the Fifth Circuit] to render it a statute of strict liability for mismarking. Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be

---

[14] ("Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.")

11

misled into thinking that the statement is true. Seven Cases of Eckman's Alterative v. United States, 239 U.S. 510, 517-18, 60 L. Ed. 411, 36 S. Ct. 190 (1916). Intent to deceive, while subjective in nature, is established in law by objective criteria. Id. Thus, "objective standards" control and "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent". See Norton v. Curtiss, 57 C.C.P.A. 1384, 433 F.2d 779, 795-96 (CCPA 1970). Thus, under such circumstances, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability. Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood. But in order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues.

Clontech, 406 F.3d at 1352

Plaintiff alleges that because the Product's package was marked with a number from a U.S. patent that (like all patents) contained a "printed title, specification, and claims describing the subject matter in the form originally issued," Compl. ¶ 25, and because Target is "a sophisticated company that has many decades of experience with applying for, obtaining, and litigating intellectual property including, but not limited to patents, and knows (itself or by its representatives), at least constructively, that patents describe the subject matter of the invention or product described therein," id. ¶ 26, Target knew or should have known that the patent number printed on the Product's package did not apply to "closet cedar storage accessories sets." Id. ¶ 27. Plaintiff also alleges, in conclusory fashion, that Target could not have reasonably believed that the Product was patented. Id. ¶ 28. From this, Plaintiff asserts that Defendant "has, upon information and belief, affirmatively and 'falsely marked' its closet cedar storage accessories sets, with the intent to deceive the public, in violation of 35 U.S.C. § 292(a)." Id. ¶ 29. The Court finds these

12

allegations insufficient to sustain a § 292(a) claim against Target.

First, there is no allegation that Target used the false mark in advertising with the intent to deceive the public. Second, assuming *arguendo* that the mark was used in advertising, there are insufficient allegations that Target acted with the requisite intent to deceive the public. Unlike the cases where a party mis-marks an item and then claims mistake or inadvertence, here there is no dispute that Target played no role in the marking of the Product. It is mere supposition to conclude that, because Target is a sophisticated corporation, it knew that the Product was not patented and that the patent number printed on back of the package belonged to another item.[15] It is even more speculative to conclude that, because Target supposedly had this knowledge, it offered the Product for sale in the packaging provided by Cedar Fresh with the specific intent to deceive the public.

Even without applying the heightened pleading standard of Fed. R. Civ. P. 9(b), see

---

[15] Although not argued by Target, it is not abundantly clear whether the patent number marked on the packaging applied to the packaging as opposed to the Product itself. The back of the packaging for the Product is marked with the following words: "Protected by U.S.Patent # 5,419,935." Pl. Opp. to Motion to Dismiss, Ex. A. U.S. Patent No. 5,419,935 ("the '935 patent"), entitled "PACKAGING FOR CEDAR PRODUCTS," is attached to the Complaint as Exhibit A. The Abstract for the '935 patent indicates that the patent is for

> [a] container for cedar products having a transparent wall portion and an opaque wall portion. The transparent wall portion has high trasnmissivity in the visible light range and low transmissivity in the ultraviolet light range. The opaque wall portion contains a coating that prevents chemicals given off by cedar wood from diffusing into the opaque wall portion.

Because the Product consisted of cedar products, it is at least arguable that the patent mark applied to, or could be thought to apply to, the packaging on which it was printed. As the Federal Circuit stated in Clontech, "in order to establish knowledge of falsity [of the mark] the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues." 406 F.3d at 1352. Plaintiff does not offer evidence of a lack of a reasonable belief by Target that the package was properly marked.

13

Juniper Works, 2009 U.S. Dist. LEXIS 40978, at *11,[16] Plaintiff has failed to set forth sufficient facts to establish a plausible claim that, by selling the Product with a false patent number on the back of its package, Target acted with the intent to deceive the public. See Max Impact, LLC., 2009 U.S. Dist. LEXIS 71013, at *3 - *4.[17]

## V.    CONCLUSION

The Court finds that, given the undisputed facts presented here, Plaintiff has not alleged a plausible § 292 claim against Target.  Inasmuch as Target is the only defendant in this action and the § 292 claim is the only claim asserted, the action must be dismissed for lack of subject matter jurisdiction.   Accordingly, that portion of Defendant's motion to dismiss [dkt. # 8] made pursuant to  Fed. R. Civ. P. 12(b)(1) is **GRANTED**, and the action is **DISMISSED.**  That portion of Defendant's motion made pursuant to  Fed. R. Civ. P. 12(b)(7) is denied as moot.

**IT IS SO ORDERED**

DATED: November 2, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[16] ("The false marking statute is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b).")

[17] (Denying the defendant's motion to amend its complaint to add a § 292(a) claim because "[t]he intent to deceive cannot be presumed simply because there exists a genuine dispute as to whether [defendant'] product infringes upon the '774 patent. . . . The paucity of merit in [defendant's] proposed counterclaim is underscored by the conclusory progression of its allegations. Nothing in the allegations sufficiently suggests that [the plaintiff] acted with a deceptive purpose in marking its [product] as patented.")